# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:09-CR-0072-01** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **DONALD A. SCOTT** | : | |

## MEMORANDUM

Presently before the court are five motions filed by defendant Donald A. Scott ("Scott") in anticipation of his criminal trial, including motions (1) to suppress physical evidence, (2) to suppress identification testimony, (3) to compel production of Brady material, (4) to compel production of Rule 404(b) information, and (5) to bifurcate trial on the charges arising under 18 U.S.C. § 922(g).[1] (See Docs. 139, 141, 143, 145, 147.) The court held an evidentiary hearing on Scott's motions on August 26, 2009,[2] after which the parties filed supplemental memoranda supportive of their respective positions. (See Docs. 185, 194.) For the reasons that follow, the motions will be granted in part and denied in part.

---

[1] Scott has also filed a motion to sever his trial from that of his co-defendants. (See Doc. 206.) The court will address this motion by separate order.

[2] Citations to the August 26, 2009 hearing transcript are abbreviated throughout as "Hr'g Tr."

I.  **Findings of Fact**[3]

In the spring of 2008, police departments in multiple south-central Pennsylvania jurisdictions began investigating a series of armed robberies that occurred in and around Cumberland County, Hamilton Township, and Franklin County. (See Hr'g Ex. 2.) The incidents targeted individuals believed to be involved in drug trafficking activity; the perpetrators wore masks, were several in number, and physically assaulted some of the victims during the course of each offense. (See id.) In May 2008, the Carlisle Borough police department identified Scott and indicted co-conspirator Chance Bonner as potential suspects in this crime spree.[4] (Id. at 2 ¶ 3.)

A.  **May 2008 Apartment Search**

On May 14, 2008, Carlisle Borough police detective Jeffrey Kurtz ("Kurtz") interviewed a confidential informant who assisted Scott in one or more robberies. (See Hr'g Tr. at 55-57; Hr'g Ex. 2 at 2 ¶ 7.) The informant alerted Kurtz to an apartment at 4064 Rawleigh Street, in Lower Paxton Township, where Scott

---

[3] These findings are based on the court's determination of credible testimonial and documentary evidence presented at the August 26, 2009 evidentiary hearing, as well as the record of the case.

[4] Chance Bonner has also moved to suppress various statements made during the course of his interrogation, (see Doc. 97), a matter which the court will resolve by separate order.

purportedly was storing stolen property and firearms.[5, 6] (See Hr'g Tr. at 55-58; Hr'g Ex. 2 at 2 ¶¶ 7-8.) Kurtz immediately swore out an affidavit of probable cause wherein he erroneously averred that his conversation with the informant transpired on May 15, 2008. (See Hr'g Tr. at 44-45; Hr'g Ex. 2 at 2 ¶ 7.) Kurtz thereafter met with a Dauphin County district justice, and applied for and received a warrant to search the Rawleigh Street apartment. (See Hr'g Tr. at 45-46.)

The warrant identified numerous items to be searched for and seized, to wit: (1) a white Dell Inspiron 530S desktop computer, (2) a widescreen seventeen-inch flat panel television, (3) Gucci prescription sunglasses, (4) identification cards belonging to those victimized by the robberies, (5) thirty-two inch and forty-two inch black Sony flatscreen televisions, (6) a Sony Playstation and Playstation video games, and (7) firearms and related paraphernalia. (See Hr'g Ex. 2 at 1.) Several of these items were reported stolen in one of the many robberies at issue in the instant investigation. (See Hr'g Tr. at 51, 55.) The affidavit of probable cause, which was attached to the warrant, catalogued additional stolen property, including Motorola, Samsung, and LG cellular telephones allegedly taken from various robbery victims.[7]

---

[5] The apartment was leased to an individual named Samantha Jackson. (Hr'g Tr. at 44; Hr'g Ex. 2.)

[6] At the time of this interview, Scott was subject to state parole conditions under the terms of which he was not permitted to possess, own, or carry firearms. (See Hr'g Ex. 2 at 2 ¶ 7.)

[7] Kurtz testified that his failure to include the cellular telephones in the warrant itself was an inadvertent error, and that he did not become aware of this oversight until after the time of the search. (See Hr'g Tr. at 47.)

3

(See Hr'g Ex. 2 at 2 ¶ 4.) The warrant does not incorporate the affidavit of probable cause. (See Hr'g Ex. 2.)

Kurtz executed the warrant shortly after it was issued. (Hr'g Tr. at 45.) In the master bedroom of the apartment, officers located and seized several items of interest, including two pairs of Motorola two-way radios; a total of eight cellular telephones; a wallet and corresponding identification belonging to Ronald James Curry; an Apple MacBook computer, Dell Inspiron 1501 laptop computer, and Dell Inspiron 530S desktop computer; one small bag of marijuana; and a bulletproof vest.[8] (Hr'g Tr. at 46, 48; Hr'g Ex. 2.) Officers also discovered one additional computer, but they did not seize this computer because they determined that it belonged to the apartment tenant, Samantha Jackson. (See Hr'g Tr. at 49.)

After the search was complete, agents of the Cumberland County Computer Forensics Unit activated both the cellular telephones and computers in an effort to verify the owner of each device. (See Hr'g Tr. at 51-52, 62; see also Hr'g Ex. 3.) It is undisputed that Scott is the owner of but one of these items: the Dell Inspiron 1501 laptop computer. (See Hr'g Tr. at 42, 62; see also Hr'g Ex. 3.) Information recovered from the Dell Inspiron 530S desktop computer suggests that it is the property of Michael Pearson and Ruth Ann Miller, targets of a robbery perpetrated

---

[8] Scott concedes admissibility of the marijuana and bulletproof vest as plain view seizures of contraband or evidence of illegality. (See Doc. 185 at 6 n.6.)

4

in April 2008, see infra.[9] (See Hr'g Ex. 3.) In addition, several of the cellular telephones appear to belong to victims of the reported robberies. (See id.) Kurtz did not obtain a second search warrant prior to requesting the forensics unit's examination of these electronic devices.

## B. Alleged Identification in June 2008

In June 2008, Scott was arrested and placed into the State Correctional Institution at Camp Hill ("SCI-Camp Hill") for violating the conditions of his parole. (See Hr'g Tr. at 28.) Shortly thereafter, on June 9, 2008, Michael Pearson ("Pearson") was also admitted into this correctional facility for incarceration. (Id. at 20.) Pearson had been robbed and beaten by masked gunmen two months earlier and, as noted above, some of his personal property was recovered in the Rawleigh Street apartment. (See Hr'g Exs. 4-5.) Pearson was unable to identify his attackers, however, and never informed police that Scott was the perpetrator of the crime. (See id.)

Within four days of Pearson's entry into SCI-Camp Hill, prison authorities issued an order requiring the separation of Scott from Pearson. (See Hr'g Tr. at 20; Hr'g Ex. 1.) The order stated that "inmate Pearson should be separated from inmate Scott as inmate Scott is believed to have kidnapped and stabbed inmate Pearson and he almost died. Inmate Pearson's girlfriend was also raped during this

---

[9] Michael Pearson reported the Dell Inspiron 530S desktop computer stolen after he was assaulted and robbed in April 2008, and Kurtz identified this device in the warrant as a target of the search. (See Hr'g Ex. 2.)

5

incident."[10] (Hr'g Ex. 1.) Lieutenant Albert Tarantella ("Tarantella"), a reception lieutenant at SCI-Camp Hill, testified that the separation order was submitted by Tanya Brandt, an administrator at the Pennsylvania Department of Corrections' central office. (Hr'g Tr. at 18.) Tarantella was uncertain who made the separation request. (Id. at 18, 22.) For his part, Pearson claims he did not request the separation order, and that "he did not have any knowledge as to who Donald Scott was" at the time the request was entered. (Id. at 32-33.)

### C. Procedural History & Pending Motions

On February 25, 2009, a grand jury indicted Scott on charges of criminal conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371, five counts of interference with commerce by threats or violence in violation of 18 U.S.C. § 1951, five counts under 18 U.S.C. § 924(c)(1)(A)(i)-(ii) for use of a firearm during and in relation to a crime of violence, two counts of taking a motor vehicle from another by force and violence or by intimidation in violation of 18 U.S.C. § 2119, and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). (See Doc. 1.) Four alleged co-conspirators were

---

[10] The assault referred to by the separation order purportedly transpired on April 8, 2008. Pearson claims that he stopped by the house of an acquaintance, Ruth Ann Miller, whereupon he was violently attacked by three men wearing masks. According to the report of Pennsylvania state trooper A.K. Leinbach, "Pearson could not give any detailed descriptions relative to height or weight of the suspects, nor could he furnish clothing descriptions. He stated that all three suspects had black masks and gloves, and that they all displayed handguns." (Hr'g Ex. 4.)

6

charged by the same indictment. (Id.) Scott pled not guilty to the indictment on March 31, 2009. (See Doc. 66.)

Scott presents several pretrial motions for the court's review. First, he moves to suppress all evidence seized from the Rawleigh Street apartment on the theory that the affidavit of probable cause contained a false statement of fact; alternatively, Scott moves to suppress any property seized which was not identified in the warrant, as well as evidence obtained when law enforcement personnel searched the contents of the seized computers and cellular telephones. (See Docs. 145, 185.) In his second motion, Scott claims that he was positively identified by Pearson while both individuals were incarcerated at SCI-Camp Hill, and he requests an evidentiary hearing to test the reliability of the identification procedure employed. (See Doc. 143.) Scott next moves to compel the government to produce Brady material and information pertaining to other crimes, wrongs or acts evidence potentially admissible under Federal Rule of Evidence 404(b). (See Docs. 139, 141.) Scott's fifth motion requests that the court bifurcate his trial on the charge of possession of a firearm by a convicted felon. (Doc. 147.) Each of these motions has been fully briefed and is ripe for disposition.

## II. Discussion

### A. Motion to Suppress Evidence

Scott's motion to suppress focuses upon what he alleges are defects in the warrant authorizing law enforcement to search the Rawleigh Street apartment. Specifically, he contends that the affidavit of probable cause contained a false

7

statement of fact: Kurtz averred that he interviewed a confidential informant on May 15, 2008—an impossibility given the warrant's execution on May 14, 2008. In addition, Scott argues that police officers seized several items that were not authorized by the warrant itself, and impermissibly searched electronic equipment without obtaining a second warrant permitting them to do so. The court will address these issues *seriatim*.

### 1. **The False Statement of Fact**

A criminal defendant may challenge the truthfulness of factual statements appearing in an affidavit of probable cause through what is commonly referred to as a Franks proceeding. See Franks v. Delaware, 438 U.S. 154, 155 (1978). Success in such a proceeding requires the defendant to make a "'substantial preliminary showing' that the affidavit contain[s] a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause." United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006) (citing Franks, 438 U.S. at 171). If the purportedly false statement was necessary to the probable cause determination, the court must conduct a hearing, during which "the defendant must ultimately prove by a preponderance of the evidence that: (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable cause determination." Id.; see also Franks, 438 U.S. at 171-72.

In the instant matter, there is no question that the affidavit of probable cause contains an erroneous statement of fact. Kurtz averred that he interviewed the confidential informant on May 15, 2008, but this simply cannot be, for the search occurred on May 14, 2008. (See Hr'g Tr. at 44-45; Hr'g Ex. 2 at 2 ¶ 7.) Scott argues that this error requires "redaction and suppression" of the seized property, (Doc. 146 at 4), but does not contemplate the possibility that Kurtz's lapse constitutes mere negligence or innocent mistake rather than reckless disregard for the truth. As the Third Circuit has explained, "[a]n assertion is made with reckless disregard for the truth when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) (quoting United States v. Clapp, 46 F.3d 795, 801 n.6 (8th Cir. 1995)). Kurtz's error simply does not rise to the Wilson standard of recklessness; although he recorded an incorrect date, there is no evidence to suggest he was attempting to gain some investigative advantage by doing so. Rather, Kurtz simply made a typographical mistake. (See Hr'g Tr. at 44-45.)

Even if Kurtz acted with reckless disregard for the truth, however, the erroneous statement was not material to the finding of probable cause. In order to determine whether a statement is material to the probable cause evaluation, the court must "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." Wilson, 212 F.3d at 789. Engaging in such an exercise in

the matter *sub judice* does nothing to alter the probable cause analysis; the amended affidavit would accurately state that Kurtz interviewed the informant on May 14, 2008, that the informant was inside the Rawleigh Street apartment within the ten days prior to the application, and that the informant observed firearms and stolen property while he was present therein. (See Hr'g Ex. 2 at 2 ¶ 7.) Viewed in this light, the amended affidavit would support a fair probability that the fruits of a crime were present inside the apartment. See Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005) (explaining that probable cause requires "a belief that guilt is reasonable"); Wilson, 212 F.3d at 789 (describing the probable cause inquiry as necessitating a 'fair probability' that a crime has been committed). Accordingly, Scott is unable to make the "substantial preliminary showing," and a Franks hearing is unnecessary. See Franks, 438 U.S. at 171.

### 2. **Seizure of Property From Rawleigh Street Apartment**

Scott next assails the sufficiency of the warrant itself. Before the court may address these complaints, however, it must determine whether Scott possessed a reasonable expectation of privacy in the Rawleigh Street apartment such that he may cognizably contest the warrant. An individual who lacks a reasonable expectation of privacy in the place searched is foreclosed from invoking the protections of the Fourth Amendment. United States v. Perez, 280 F.3d 318, 337 (3d Cir. 2002). Quite simply, the defendant "who is aggrieved by an illegal search and seizure through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment

10

rights infringed." Rakas v. Illinois, 439 U.S. 128, 133-34 (1978); United States v. Baker, 221 F.3d 438, 442 (3d Cir. 2000) (same).

It is undisputed that an individual named Samantha Jackson was the legal tenant residing at the Rawleigh Street apartment. Scott has offered no evidence to suggest that he had a reasonable expectation of privacy in this dwelling; he does not contend that he lived at the apartment, that he stayed at the apartment for any period of time, that he was ever invited into the apartment, or that he had a key to the apartment.[11] See Minnesota v. Carter, 525 U.S. 83, 89 (1998) (stating that an overnight guest may have a reasonable expectation of privacy in a home that is not their own, "but one who is merely present with the consent of the householder may not"); Perez, 280 F.3d at 337 (same); United States v. Huggins, No. Crim. 03-091-SLR, 2004 WL 2434301, at *1 (D. Del. Oct. 21, 2004) (rejecting defendant's attempts to contest home search when he was not "the owner, lessor, or even a resident of

---

[11] For a defendant to establish a reasonable expectation of privacy in a searched dwelling, he must show both a subjective expectation of privacy and that the expectation is objectively reasonable. See Minnesota v. Olson, 495 U.S. 91, 96-97 (1990); United States v. Baker, 221 F.3d 438, 441 (3d Cir. 2000). The record herein is exceedingly thin with respect to Scott's interaction with the Rawleigh Street apartment. In fact, the sole evidence proffered in this regard is intelligence provided by the confidential informant in the affidavit of probable cause, wherein the informant states that Scott simply used the apartment as a depository for the fruits of his robberies. (See Hr'g Ex. 2 at 2 ¶¶ 7-8 (reproducing informant's assertion that Scott "store[d] property stolen from the different robberies" in the apartment)). This evidence is insufficient to establish that Scott was present in the Rawleigh Street apartment for any legitimate purpose, see Minnesota v. Carter, 525 U.S. 83, 90 (1998) (holding that individuals present in home merely to engage in drug trafficking activity have no reasonable expectation of privacy), and he offers no other evidence to support a reasonable expectation of privacy.

11

th[e] location"); see also Rawlings v. Kentucky, 448 U.S. 98, 105 (1980) (explaining that an individual may manifest an expectation of privacy by demonstrating that he or she had requested and received access to a third party's locked property); Warner v. McCunney, 259 F. App'x 476, 477 (3d Cir. 2008) (stating that several factors are pertinent to a defendant's expectation of privacy, including "whether the party has a possessory interest in the things seized or the place searched; whether the party can exclude others from the place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises"). Scott has therefore failed to establish a reasonable expectation of privacy in the Rawleigh Street apartment, and lacks the capacity to challenge the sufficiency of the warrant to search that premises. See Perez, 280 F.3d at 338 (rejecting defendants' challenge when they presented no evidence to show their purportedly legitimate expectation of privacy).

Although Scott lacks standing to challenge the seizure of property from the Rawleigh Street apartment, he is not foreclosed from contesting the subsequent search of his Dell 1501 laptop computer by the Cumberland County Forensics Unit. Scott clearly possessed a reasonable expectation of privacy in the contents of what the government acknowledges is his personal property. Furthermore, the government concedes that it did not obtain a warrant to search the contents of the computer, and offers no justification for not doing so. Perhaps as a consequence of this oversight, the government does not contest Scott's motion to suppress the

fruits of the laptop computer search. (See Doc. 194 at 14.) Accordingly, the contents of the computer will be suppressed.

### B. Motion to Suppress Identification Testimony

Scott's motion to suppress identification testimony is based upon the supposition that Pearson positively identified him at some point in June 2008. Specifically, Scott claims that "Pearson requested to be separated from the Defendant Scott [during their incarceration at SCI-Camp Hill] and during this process would have been shown a single photograph of the Defendant Scott by prison officials so as to identify the individual from whom he wished to be separated." (Doc. 144 at 3.) This hypothesis is not supported by the facts presented during the evidentiary hearing. Both Tarantella and Agent Scott Endy ("Endy") of the Bureau of Alcohol, Tobacco and Firearms testified that Pearson never positively identified Scott and never requested that the two be separated. (See Hr'g Tr. at 17, 32-33.) In fact, Pearson told Endy that in June 2008, "he did not have any knowledge as to who Donald Scott was" and "prison officials did not show him any photographs."[12] (Id. at 32-33.) Scott offers no evidence to rebut this testimony.

In circumstances where "an identification procedure is so suggestive that it undermines the reliability of the resulting identification," a criminal defendant may reasonably assert the existence of a due process violation. United States v.

---

[12] Tarantella also testified that he did not show Pearson any photographs, and that he has never shown an inmate a photograph in an effort to procure an identification. (Hr'g Tr. at 19.)

13

Lawrence, 349 F.3d 109, 115 (3d Cir. 2003). However, the burden of proving a suggestive identification procedure falls to the defendant. See Reese v. Fulcomer, 946 F.2d 247, 259 (3d Cir. 1991). In the matter *sub judice*, the facts do not establish that an identification ever occurred. Consequently, the court will deny Scott's motion to suppress. Should he unearth evidence that an improper identification procedure was employed during the investigation, Scott may retool his motion.[13]

### C. Motions to Compel *Brady* and Rule 404(b) Material

Scott's next two motions request that the government forthwith produce material that it is required to disclose under Brady v. Maryland, 373 U.S. 83 (1963), and Federal Rule of Evidence 404(b). (See Docs. 139, 141.) With respect to Brady material, the government acknowledges its eventual duty of disclosure, but correctly notes that Scott "is not entitled to [the information] at this time." (Doc. 159 at 11.) Pursuant to 18 U.S.C. § 3500, "no statement or report in the possession

---

[13] At the August 26 evidentiary hearing, defense counsel requested that the court direct a line-up "so that we can determine whether or not Mr. Pearson can really identify the defendant under circumstances where there is no suggestion." (Hr'g Tr. at 8.) The court rejected this request, explaining that to order a line-up "is an unfair shifting of burdens." (Id. at 15.) Scott also takes umbrage with a separate incident involving an individual named Montay Kitt—a victim purportedly robbed by Scott and co-defendant Chance Bonner. (See Doc. 144 at 3-4.) At a preliminary hearing in state court, Bonner testified that Scott was a participant in the robbery. Kitt thereafter contradicted Bonner's testimony, stating "that is not him [Scott]. That is not one of the, I do not think that's one of the dudes that was in the house." (Doc. 144, Ex. 1 at 32.) Scott contends that "this indicates something is wrong with the identification procedures used in this case." (Doc. 144 at 3.) As the court explained during the evidentiary hearing, (see Hr'g Tr. at 15), the veracity of Bonner's testimony is a proper subject of cross examination at trial and does not implicate identification procedures whose potential suggestiveness may compromise due process concerns.

of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." During the August 26, 2009 evidentiary hearing, defense counsel appears to have acknowledged that the requested disclosure was premature when he stated, "I didn't ask for Brady[,] the government's brief talks about Brady although I will say that if there are any other descriptions out there that don't match the defendant I would like to get them, that's Brady material." (Hr'g Tr. at 14.) Given the government's averment that Brady material will be provided at the appropriate time, the court will deny Scott's motion to compel without prejudice.

Scott also appears to have withdrawn his motion to compel production of Rule 404(b) information. Rule 404(b) allows a party to offer evidence of other crimes, wrongs, or acts to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See Fed. R. Evid. 404(b). In a criminal prosecution, the government must provide a defendant with reasonable notice in advance of trial if it intends to offer evidence under this provision. See id. The government avers that it has provided Scott "with all such evidence it has and if additional evidence of this nature comes into its possession, it will provide it to [defendant]," (Doc. 159 at 3 n.2); defense counsel accepted this affirmation at the evidentiary hearing, (Hr'g Tr. at 14-15). The court likewise accepts the government's statement, and will accordingly deny Scott's motion to compel without prejudice.

15

### D. <u>Motion to Bifurcate</u>

In Count XV of the indictment, Scott is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). (<u>See</u> Doc. 1.) Scott moves to bifurcate his trial on this count from the remainder of the offenses charged. (Doc. 147.) In this circuit, bifurcation is preferred when a felon in possession charge is joined with other charges. <u>See</u> <u>United States v. Joshua</u>, 976 F.2d 844, 847-48 (3d Cir. 1992); <u>United States v. Busic</u>, 587 F.2d 577, 585 (3d Cir. 1978). The government also "does not object to the bifurcation of Count [XV]." (Doc. 159 at 2 n.1.) Consequently, Scott's trial on Count XV will be bifurcated.

**III. Conclusion**

For the foregoing reasons, the court concludes that Scott lacks the capacity to challenge the sufficiency of the warrant under the Fourth Amendment, and has not demonstrated that a suggestive identification procedure was employed at any time during the instant investigation. However, it is undisputed that Scott has a reasonable expectation of privacy in the contents of his personal computer, and his motion to suppress the contents thereof will be granted. In addition, Scott acknowledges that he is not yet entitled to material encompassed by Brady, and the government asserts that it has already disclosed any information required by Federal Rule of Evidence 404(b). Finally, the parties agree that it is appropriate to bifurcate Scott's trial on the charge of being a felon in possession of a firearm. Therefore, the court will grant in part and deny in part Scott's motion to suppress evidence, and will deny the motions to suppress identification testimony, as well as the motions to compel production of Brady and 404(b) material. Scott's motion to bifurcate will be granted.

An appropriate order follows.

        S/ Christopher C. Conner
        CHRISTOPHER C. CONNER
        United States District Judge

Dated:      November 20, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO. 1:09-CR-0072-01 |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **DONALD A. SCOTT** | : | |

## ORDER

AND NOW, this 20th day of November, 2009, upon consideration of defendant's motions to suppress evidence, to suppress identification testimony, for release of <u>Brady</u> material, for production of Rule 404(b) material, and to bifurcate trial on Count XV of the indictment, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion (Doc. 139) for release of <u>Brady</u> material is DENIED.

2. The motion (Doc. 141) to produce Rule 404(b) material is DENIED.

3. The motion (Doc. 143) to suppress identification testimony is DENIED.

4. The motion (Doc. 145) to suppress physical evidence is GRANTED in part and DENIED in part as follows:

    a. The motion is GRANTED with respect to the search and seizure of information contained within defendant's Dell 1501 laptop computer.

    b. The motion is DENIED in all other respects.

5. The motion (Doc. 147) to bifurcate defendant's trial on Count XV is GRANTED.

                                                              S/ Christopher C. Conner
                                                               CHRISTOPHER C. CONNER
                                                               United States District Judge