# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 1:09-CR-072-01** |
| : | |
| v. : | **(Judge Conner)** |
| : | |
| **DONALD A. SCOTT** : | |

## MEMORANDUM

Presently before the court is the motion (Doc. 206) of defendant Donald A. Scott ("Scott") to sever all charges against him for a separate trial. Scott contends that he will be prejudiced if he is tried jointly with co-defendant Chance Bonner ("Bonner"), whose confessions the government intends to introduce for inculpatory effect. For the reasons that follow, the motion will be denied. The court concludes, however, that admitting several of Bonner's statements will run afoul of the rule set forth in Bruton v. United States, 391 U.S. 123 (1968), and its progeny. Accordingly, entry of these offending statements will not be permitted in a joint prosecution featuring Scott and Bonner as co-defendants.

## I. Factual Allegations

The indictment (Doc. 1) contains fifteen separate counts against various permutations of the five defendants named therein. Count 1 charges all defendants with conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371. Twelve of the remaining counts accuse Scott and some combination of co-defendants with five Hobbs Act robberies under 18 U.S.C. § 1951, two carjackings under 18 U.S.C. § 2119, and use of a firearm in relation to crimes of violence under 18 U.S.C. § 924(c). The final count in the indictment charges Scott

and two others with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). In total, Scott is charged in fourteen of the indictment's fifteen counts.[1]

Scott moves to sever all charges against him, alleging that he will be prejudiced if tried jointly with his co-conspirators. Specifically, Scott contends that one co-defendant, Bonner, provided law enforcement with six statements that directly incriminate Scott in the charged crimes. Scott argues that the government's admission of these statements at trial will subvert his right to confront the witnesses against him. (See Doc. 207.) The government argues that severance is inappropriate in this matter, invoking the preference in the federal system for joint trials. (See Doc. 210.) The parties have fully briefed this motion, which is now ripe for disposition.

## II. Discussion

"There is a preference in the federal system for joint trial of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993); see also United States v. Lore, 430 F.3d 190, 204-05 (3d Cir. 2005) (explaining that "the federal system prefers joint trials of defendants who are indicted together because joint trials promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts" (internal quotation omitted)). Rule 8 of the Federal Rules of Criminal Procedure reflects this liberal joinder policy,

---

[1] The lone count in which Scott is not charged accuses Miqual Hodge of knowingly transferring a firearm with the understanding that the firearm will be used to commit a crime of violence in violation of 18 U.S.C. § 924(h). (See Doc. 1.)

allowing the government to charge two or more defendants in the same indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM P. 8(b). When all the charged defendants are alleged to have participated in a single conspiracy, a joint trial appropriately "aid[s] the finder of fact in determining the full extent of the conspiracy and prevent[s] the tactical disadvantage of the government from disclosure of its case." United States v. Voigt, 89 F.3d 1050, 1094 (3d Cir. 1996) (internal quotations omitted). In the matter *sub judice*, Scott does not contend that he was improperly charged along with his co-conspirators, but rather that he is entitled to relief from prejudicial joinder pursuant to Federal Rule of Criminal Procedure 14.

Properly joined charges may be severed pursuant to Rule 14 if the joinder "appears to prejudice a defendant or the government." FED. R. CRIM. P. 14(a). A court should sever charges "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539; United States v. Silveus, 542 F.3d 993, 1005-06 (3d Cir. 2008). "[A] defendant is not entitled to a severance merely because evidence against a co-defendant is more damaging than evidence against the moving party," Lore, 430 F.3d at 205 (quoting United States v. Somers, 496 F.2d 723, 730 (3d Cir. 1974)), and the defendant must demonstrate that "clear and substantial prejudice" will result if all counts of the indictment are tried jointly, United States v. Davis, 397 F.3d 173, 182 (3d Cir. 2005).

3

However, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro, 506 U.S. at 538-39.

Scott is accused of membership in a five-person conspiracy to commit an offense against the United States by, *inter alia*, interfering with interstate and foreign commerce by threats of violence, carjacking, unlawful transfer and possession of firearms by convicted felons, and carrying firearms for use in a crime of violence. (See Doc. 1.) The indictment describes five Hobbs Act robberies, which occurred on January 2, 2008; February 1, 2008; March 22, 2008; and April 8, 2008. On January 2 and February 1, Scott is alleged to have committed robberies along with co-defendant DeShawn Livingston ("Livingston"). On March 22, the government alleges that Scott committed armed robbery with assistance from Bonner and co-defendant Lori Ann Miller ("Miller"). On April 8, Scott was purportedly aided by Bonner and co-defendant Miqual Hodge ("Hodge"). Thus, although the conspiracy comprises five individuals, each Hobbs Act offense was purportedly carried out by Scott and one or more accomplices.

On October 6, 2009, the government produced six statements provided by Bonner to law enforcement officers during the course of their investigation. (See Doc. 207-2.) These statements were procured during interviews of Bonner by various investigators on May 13, 2008; May 14, 2008; May 19, 2008; May 20, 2008; June 18, 2008; and July 9, 2008. The interviews were not recorded, nor were the

4

statements formally adopted by Bonner as his own.[2] Instead, the content of each interview has been preserved in the form of memoranda prepared by the officers present. In each conversation, Bonner makes multiple references to Scott—references which the government proposes to redact and replace with generic terms such as "another person" or "another individual" or a gender-neutral pronoun. The government seeks to introduce Bonner's statements at trial through the testimony of its agents. Scott contends that this will amount to a violation of the Confrontation Clause.

The Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. In <u>Bruton v. United States</u>, the Supreme Court held that a defendant is deprived of his confrontation rights when a non-testifying co-defendant's statement is introduced at their joint trial, and that statement names the defendant as a participant in the crime charged. <u>See</u> 391 U.S. at 134-37. The Court limited the <u>Bruton</u> rule in later cases, however, explaining that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987). According to the

---

[2] In a separate pretrial proceeding, Bonner is contesting the admissibility of each of these statements under the Fifth and Sixth Amendments. (<u>See</u> Doc. 97.) The court will resolve this motion by separate order.

Third Circuit Court of Appeals, "Bruton and its progeny established that in a joint criminal trial before a jury, a defendant's Sixth Amendment right of confrontation is violated by admitting a confession of a non-testifying codefendant that *implicates* the defendant, regardless of any limiting instruction given to the jury." Johnson v. Tennis, 549 F.3d 296, 298 (3d Cir. 2008) (emphasis added). The Third Circuit has held in at least one instance that replacing an objecting defendant's name with references to "the other guy," "someone else," "the guy," and "another guy," did not create a Confrontation Clause violation.[3] See Priester v. Vaughn, 382 F.3d 394, 399 (3d Cir. 2004).

In order to resolve the present motion, the court must examine each statement procured from Bonner, as well as the government's proposed redactions thereto. If, in spite of the proffered alterations, a statement is so "'powerfully incriminating' or 'devastating' that a limiting instruction fails to adequately safeguard the defendant's Sixth Amendment rights," United States v. McKee, 506 F.3d 225, 249 (3d Cir. 2007) (quoting Bruton, 391 U.S. at 135-36), then that statement

---

[3] Since 1998, the Third Circuit has considered the constitutionality of redacted confessions in four cases: Vazquez v. Wilson, 550 F.3d 270 (3d Cir. 2008); United States v. Hardwick, 544 F.3d 565 (3d Cir. 2008); Priester v. Vaughn, 382 F.3d 394 (3d Cir. 2004); and United States v. Richards, 241 F.3d 335 (3d Cir. 2001). Only in Priester did the appellate court conclude that the Sixth Amendment's boundaries were not transgressed.

is inadmissible at a joint trial involving both Scott and Bonner. The court will examine each statement *seriatim*.[4, 5]

### A. May 13, 2008 Telephone Call with Detective Heffner

On May 13, 2008, Harrisburg police detective Donald Heffner received a telephone call from Bonner. In pertinent part, Heffner's record of the call states as follows:

> Bonner told me that this is his 11th day clean from drugs except marijuana. Bonner admitted to being addicted to crack. A person named D.C. with a prior murder in his criminal history, gave Bonner a marijuana blunt with crack in it as a joke. Bonner said he has been hooked ever since. D.C. would ask Bonner and Jennifer Bass for rides. He would ask them to stop the car, get out and do his thing and now Bonner was knee deep in trouble.

(Doc. 207-2.) The government proposes the following alteration:

> Bonner admitted to being addicted to crack. *A person* gave him a marijuana blunt with crack in it as a joke. Bonner said he has been hooked ever since. *Another person* would ask Bonner and Jennifer Bass for rides. *This other person* would ask them to stop the car, get out and do *their* thing, and now Bonner was knee deep in trouble.

---

[4] In something of a shotgun-style strategy, defense counsel challenges the admissibility of all of the statements made by Bonner which make reference to Scott. As the following discussion makes clear, however, the court must apply the Bruton rule to each statement with greater particularity than that employed by Scott in his motion to sever. Moving forward, Scott must lodge remaining Bruton objections with more specificity so that the government is on fair notice of his arguments, and so that the court may conduct an appropriately searching inquiry.

[5] Bonner repeatedly refers to Scott as "D.C." in the statements to follow. (See Doc. 207-2.) Although Scott does not pinpoint the precise portions of each statement to which he objects, (see Doc. 207; Doc. 210 at 6), the court will assume that Scott is opposed to any reference by Bonner to "D.C."

7

(Id. (emphasis in original)). The court finds that admission of this statement, as altered, does not offend the rule set forth in Bruton.

Quite simply, the statement is not incriminating on its face. See Vasquez v. Wilson, 550 F.3d 270, 279 (3d Cir. 2008) (explaining that in Bruton, the proffered confession was "'incriminating on its face' with respect to the objecting defendant, whereas in Richardson the statement did not implicate the objecting defendant" and was therefore admissible as redacted). The activity to which Bonner is referring at the altered statement's end is not altogether clear. Thus, any allusion to the charged robberies—to the extent that the statement contains such an allusion—is oblique at best. Given the statement's ambiguity, it is certainly not self-evident that Scott, or any member of the conspiracy for that matter, is the "other person" mentioned herein. Thus, admission of the May 13 statement will not violate Scott's confrontation rights.

### B. May 14, 2008 Interview with Detective Kurtz and Detective O'Connor

On May 14, 2008, Carlisle Borough police detective Jeffrey Kurtz and Harrisburg police detective John O'Connor met with Bonner in person. According to the detectives' memorandum, Bonner related details pertaining to the robberies charged in the instant indictment:

> Bonner said he was present when the guy in Chambersburg got robbed and stabbed in the neck and if we checked w[ith] the victims they would tell us that one of the guys was trying to be nice. Bonner said the incident was set up a w[ith] a w/f and another b/m that he didn't know well other than through D.C. (Scott). Bonner said the w/f was being beat and was asking for it to be done harder to make it look real in front of the other

8

> victims. Bonner said Bass had driven them to Chambersburg but remained in a house where the w/f lived.
>
> Bonner detailed some of the incident in Newville and said they went to Warren's house after being inside Barnes' and Stackfield's house for a while. Warren got funny and D.C. hit him in the face. Bonner said he was in the van when D.C. and another b/m went to hit Eric Clark (Brown). Bonner said he wasn't sure what happened but Clark went running down the street yelling for help and for someone to call 911. D.C. and the other b/m came running back and they drove around Carlisle for a while.
>
> Bonner provided information after identifying the apartment of Samantha Jackson as a place that he met w[ith] D.C. and knew D.C. to store guns. Bonner said he had moved the property taken from different home invasions/thefts inside the apartment.

(Doc. 207-2.) The government proposes to alter the statement as follows:

> Bonner said he was present when the guy in Chambersburg got robbed and stabbed in the neck, and if we checked with the victims, they would tell us that one of the guys was trying to be nice. Bonner said the incident was set up by a white female and *another person*. Bonner said the white female was being beat and was asking for it to be done harder to make it look real in front of the other victims. Bonner said that [Jennifer] Bass had driven them to Chambersburg but remained in a house where the white female lived.
>
> Bonner detailed some of the incident in Newville and said they went to Warrens' house after being inside Barnes' and Stackfield's house for a while. Warren got funny and *one of the others* hit him in the face. Bonner said he was in the van when *the others* went and hit Eric Clark. Bonner said he wasn't sure what happened but Clark went running down the street yelling for help and for someone to call 911. The *other two* came running back, and they drove around Carlisle for a while.
>
> Bonner provided information after identifying the apartment of Samantha Jackson as a place w[h]ere guns were stored and where he had moved property taken from different home invasions/thefts inside the apartment.

(Id. (emphasis in original)). The court finds that the altered statement is admissible in part, and will address separately each of the paragraphs reproduced above.

9

In the first paragraph, which refers to the Chambersburg robbery that occurred in April 2008, the sole allusion to Scott appears when Bonner explains that the "incident was set up by a white female and *another person*." Three individuals are charged in the actual commission of the Chambersburg offense: Bonner, Scott, and a female named Lori Ann Miller ("Miller").[6] The statement in question refers to a female and "another person." Thus, if Bonner's statement is admitted and he elects not to testify, there is a significant likelihood that the jury will presume, by process of elimination, that reference to "another person" is in reality one to Scott. See United States v. Hardwick, 544 F.3d 565, 573-74 (3d Cir. 2008) (finding Bruton violation when trial involved multiple co-defendants, but only two were charged with crime implicated by non-testifying defendant's confession, and government replaced references to objecting defendant with terms such as "others" and "another person"). The proffered statement therefore runs afoul of the Sixth Amendment. See id. at 573 ("Even redacted statements will present Confrontation Clause problems unless the redactions are so thorough that the statement must be linked to other evidence before it can incriminate the co-defendant."). The government may nevertheless avoid severance by omitting this entire sentence from the first paragraph. See FED. R. CRIM. P. 14(a) (allowing court to order severance or "any other relief that justice requires").

---

[6] This incident is charged in Count 12 of the indictment. (Doc. 1.)

10

The references to Scott in the second paragraph are more numerous and, it appears, less capable of easy extraction. While discussing the second robbery for which he and Scott are indicted, Bonner says that he sat in the van "when *the others* went and hit Eric Clark."[7] According to Bonner, Clark then fled from his home followed by the "*other two*." Aside from Bonner and Scott, Hodge is also charged with commission of this offense. It is therefore clear from the face of this statement that one of the other two individuals described by Bonner must be Scott; there are three individuals charged with the robbery, and Bonner's confession accounts only for his own whereabouts during the offense. See Vasquez, 550 F.3d at 281 (finding non-testifying defendant's reference to "the other guy" inconsistent with Bruton in a three-defendant case). Our sister court for the Eastern District of Pennsylvania arrived at a similar conclusion in a recent three-defendant-robbery case where the names of the non-testifying defendant's two accomplices were replaced by "the other guy" and "some guy" in a confession admitted into evidence. Robinson v. Shannon, Civ. A. No. 08-1074, 2009 WL 2474632, at *5 (E.D. Pa. Aug. 11, 2009). According to the Robinson court, "the jury could have easily concluded that [the objecting defendant] was one of the three 'guys' who participated in the crime." Id. Likewise, the jury in the matter *sub judice* could easily conclude that Scott is one of

---

[7] It is unclear from the sparse factual record whether the robbery of Eric Clark constitutes the second Hobbs Act offense which Bonner and Scott are alleged to have committed together. If it is not, the analysis set forth above is subject to reconsideration. In the interest of judicial economy, however, the court implores the parties to lodge forthcoming Bruton objections with greater factual specificity.

11

"the other two" individuals described by Bonner and, should Bonner choose to invoke his right to remain silent, Scott will be deprived the opportunity to confront this inference head-on. The government is free to offer an alternate redaction or withdraw the paragraph altogether.

The third paragraph proffered by the government contains no reference to Scott and, therefore, is not inculpatory with respect to him. Consequently, this paragraph poses no danger to Scott's confrontation rights and is admissible under the Sixth Amendment.

### C. May 19, 2008 Interview with Detective Alcorn

On May 19, 2008, Lower Paxton Township police detective Steve Alcorn met with Bonner at Dauphin County prison. Alcorn recorded the conversation as follows:

> [Bonner] and his girlfriend drove with D.C. to a place in Carlisle with a tall Spanish guy that Bonner did not know. D.C. and the Spanish guy left for about 15 to 20 minutes. Bonner saw a guy running out of the shadows in to the street. Soon after D.C. and the Spanish guy returned and they drove off. D.C. said they didn't get anything because the guy wanted to fight. Bonner mentioned the name Eric Clarkes.
>
> Bonner said that he did the Tim Neally burglary but they left mad because they didn't get anything. They were looking for drugs. He did a robbery with D.C. in Harrisburg. They took drugs, money, a revolver and as they were leaving D.C. took the family dog, a Miniature Pinscher. They took approximately 5 oz. of crack, 3 oz. of powder cocaine and about $7000 in cash. Bonner would recognize the house they robbed.

(Doc. 207-2.) The government proposes to alter the statement thusly:

> [Bonner] and his girlfriend drove with *two other persons* to a place in Carlisle. *The two others* left for about 15 to 20 minutes. Bonner saw a guy running out of the shadows in to the street. Soon after, the *other two*

12

*persons* returned and they drove off. *They* did not get anything because the guy wanted to fight.

Bonner said that he did the Tim Neally burglary, but they left mad because they didn't get anything. They were looking for drugs. He did a robbery with *another person* in Harrisburg. They took drugs, money, a revolver and as they were leaving, *they* took the family dog, a miniature Pinscher. They took approximately 5 ounces of crack, three ounces of powder cocaine and about $7,000 in cash. Bonner would be able to recognize the house they robbed.

(Id. (emphasis in original)). The court finds that these statements do not offend the rule set forth in Bruton.

Neither of the above-referenced incidents involve crimes encompassed by the instant indictment. Thus, the statements do not implicate Scott in any of charged crimes.[8] See Richardson, 481 U.S. at 208-09 (finding no Sixth Amendment violation when statement was not directly incriminating of charged offense). Even if the jury were to presume that Scott was one of the "other persons" to whom Bonner refers, their presumption would only link Scott to illegality attenuated from the underlying Hobbs Act offenses. Such a presumption may, of course, be prejudicial to Scott, but not so much so to outweigh the preference to try co-conspirators jointly. See Davis, 397 F.3d at 182 (holding that defendant is only entitled to severance if "substantial prejudice" will result from joint trial). In this fashion, Bonner's statements on May 19 are not incriminating on their face and do not pose a confrontation problem.

---

[8] From the exhibits submitted by the parties, it does not appear that "the Tim Neally burglary" is charged in the instant indictment. If the court is incorrect on this point, it will revisit its ruling at the request of either party.

13

### D. May 20, 2008 Interview with Trooper Hershey and Trooper Martin

On May 20, 2008, Pennsylvania State Troopers Franklin Hershey and Aaron Martin interviewed Bonner at Dauphin County prison. The memoranda produced from this conversation is lengthy and provides a detailed account of the April 2008 robbery perpetrated by Bonner, Scott, and Miller. The statement is replete with references to Scott and catalogs his actions during the robbery in extensive detail. The government has not submitted an amended statement with redactions, but proposes that each reference to Scott be replaced with the phrase "'another person' or some gender neutral pronoun."

Submission of this statement as the government proposes will run afoul of Bruton and its progeny. The April 2008 offense constitutes one of the two Hobbs Act robberies which Scott and Bonner perpetrated in tandem. In a three-person criminal act such as this, references to "another person" by one of the two accused are bound to lead the jury to infer that Scott was one of the perpetrators involved. See Hardwick, 544 F.3d at 573 (finding Bruton violation when only two co-defendants charged with murder and non-testifying defendant's statement was redacted to refer to "others" instead of objecting defendant); see also United States v. Richards, 241 F.3d 335, 346-47 (3d Cir. 2001) (explaining that confession's reference to a "friend" unequivocally points to co-defendant when two defendants are charged with offense in question); Robinson, 2009 WL 2474632, at *5 (finding statement referencing "the other guy" violative of Bruton in three-defendant case). This likelihood is all the more acute when coupled with the inevitable presentation

14

of government argument and extrinsic evidence linking Scott to the April 2008 offense. In short, the statement is incriminating on its face; when linked with other evidence, it is virtually unthinkable that the jury would conclude that "'another person or some gender neutral pronoun" referred to anyone but Scott. See Vazquez, 550 F.3d at 278-79 (explaining that "the nature of the redacted statement and the other evidence in the record is vitally important in determining whether a defendant's Confrontation Clause right has been violated" (quoting Hardwick, 544 F.3d at 573)). Consequently, the government's proposal runs afoul of the Sixth Amendment and the altered statement will be excluded in its entirety.

### E. June 18, 2008 Interview with Special Agent Endy and Detective Haney

On June 18, 2008, Agent Scott Endy ("Endy") of the Bureau of Alcohol, Tobacco, Firearms and Explosives interviewed Bonner along with Swatara Township police detective Ed Haney ("Haney"). According to the memorandum produced by Endy, "Bonner was asked to provide information regarding Donald Scott, aka 'DC'. At this time, Bonner provided information implicating him and others in [several] crimes." (Doc. 207-2.) The six-page memorandum then goes on to detail numerous criminal acts perpetrated by Scott, some of which are charged in the instant indictment. The government wishes to enter this confession in full, and proposes that "every direct reference to [Scott be replaced by the phrase] 'another person' or some gender neutral pronoun." (Id.)

15

The court finds that large portions of this memorandum—particularly those discussing the two Hobbs Act robberies allegedly carried out by Bonner and Scott in tandem—are incriminating on their face. Such statements are therefore inadmissible for the reasons expressed supra. In accordance with the order attached hereto, the court will permit the government to seek admittance of specific portions of the June 18 statement that do not implicate Scott in the indicted robberies; as it is currently proffered, however, the statement is inadmissible under the Bruton rule.

### F.      July 9, 2009 Interview with Special Agent Endy and Detective Haney

On July 9, 2009 Endy and Haney met with Bonner at the Swatara Township police department for the purpose of showing him a "photographic book to assist in the identification of targets and victims in this investigation." (Doc. 207-2.) According to the post-interview memorandum produced by Endy, Bonner identified a total of sixteen individuals and provided a varying degree of detail about each. Many of Bonner's descriptions make no reference to Scott; entry of these descriptions therefore does not offend Bruton. With respect to the remaining statements, the government proposes to replace all references to Scott with an appropriate, gender-neutral pronoun. (See id.)

Scott does not particularize his objections to the statements made during the July 9 interview, but instead opposes any substitution of his name with the terms "another person" or "another individual." (See Doc. 207 at 5.) Nonetheless, the

16

court finds that some of the descriptions supplied by Bonner—such as those referencing crimes charged in the instant indictment—are violative of <u>Bruton</u>, for the reasons explained <u>supra</u>. However, many of the descriptions do not inculpate Scott even though they contain Scott's name. For example, Bonner identified an individual named Latoria Carroll-Berry as "one of Scott's girlfriend[s] who worked at Wal-Mart and was involved in stealing items from the store." (Doc. 207-2.) Entry of this statement, with the government's proposed redaction, does not implicate Scott in any charged offense, and thus does not subvert Scott's confrontation rights. Because the July 9 memorandum contains several references to Scott that are not incriminating on their face, the court will require defense counsel to particularize his objections to Bonner's descriptions. Failure to do so will constitute a waiver of any argument that the July 9 memorandum contains <u>Bruton</u>-offensive allusions.

### III. Conclusion

Over the course of the instant investigation, Chance Bonner provided law enforcement with six inculpatory statements. Several of these statements also incriminate his co-defendant, Donald Scott. For the reasons detailed above, admission of statements which incriminate Scott on their face will not be permitted in a joint prosecution of Bonner and Scott. See Bruton, 391 U.S. at 134-37. The court will not micromanage the prosecution's trial strategy, however, and will afford the government ten days' time (1) to propose further redactions to Bonner's statements in accordance with this memorandum; (2) to stipulate to the preclusion of the offending statements from trial, or; (3) to sever the charges against Scott for separate trial.

An appropriate order follows.


       S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge


Dated:      November 24, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:09-CR-072-01** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **DONALD A. SCOTT** | : | |

## ORDER

AND NOW, this 24th day of November, 2009, upon consideration of defendant's motion (Doc. 206) to sever all charges against him for a separate trial, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendant's motion (Doc. 206) is DENIED. See Zafiro v. United States, 506 U.S. 534, 538-39 (1993) ("Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.").

2. On or before December 8, 2009, the government shall file a statement with the court indicating whether it intends to proceed against defendant and Chance Bonner in a joint trial.

    a. If the government intends to proceed with joint trial, it shall:

        i. Indicate whether it also intends to offer into evidence those statements which the court has found to pose potential Confrontation Clause concerns, and if so;

        ii. Propose revised redactions to the potentially problematic statements, in accordance with the discussion contained in the accompanying memorandum; or

        iii. Indicate whether it will stipulate to the inadmissibility of those statements found to pose potential Confrontation Clause concerns.

    b. If the government intends to sever the charges against defendant, it shall forthwith file a motion to sever.

3.  Should the government submit revised redactions pursuant to Paragraph 2(a)(ii) of this order, defendant may thereafter file renewed <u>Bruton</u> objections on or before December 18, 2009.  Any objections filed pursuant to this Paragraph shall identify the particular statement to which defendant objects and state the reasons therefor.  Failure to assert particularized objections shall constitute waiver of the asserted argument.

      <u>S/ Christopher C. Conner</u>
      CHRISTOPHER C. CONNER
      United States District Judge