**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:09-CR-72 |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| DONALD A. SCOTT, | : | |
| | : | |
| Petitioner | : | |

## <u>MEMORANDUM</u>

Presently before the court is the *pro se* motion (Doc. 548) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255,[1] filed February 7, 2014, by Donald A. Scott ("Scott").  In August of 2010, a jury sitting in Harrisburg, Pennsylvania, convicted Scott of numerous federal offenses, including four instances of Hobbs Act robbery under 18 U.S.C. § 1951, two instances of carjacking in violation of 18 U.S.C. § 2119, four instances of possession of a firearm in furtherance of crimes of violence, and conspiracy against the United States.  The court sentenced Scott to 1,276 months imprisonment, the minimum sentence recommended by the Sentencing Guidelines after accounting for various statutory mandatory minimum sentences.  Scott seeks *vacatur* of several of those convictions.  For the reasons that follow, the court will deny Scott's motion.[2]

---

[1] <u>See</u> 28 U.S.C. § 2255 ("A prisoner in custody under sentence of a [district] court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

[2] Also before the court is Scott's motion (Doc. 567) to amend, wherein he seeks to include an additional claim under Section 2255.  The court considers this request in connection with Scott's initial petition.

I.     **Factual Background**[3]

The events underlying Scott's numerous convictions date back to late winter and early spring of 2008, when a multi-jurisdictional law enforcement team began investigating a string of armed robberies and carjackings that occurred in south-central Pennsylvania.  The evidence introduced at trial generally established that Scott and his codefendants[4] robbed a number of victims at gunpoint on February 1, 2008, in Harrisburg, Pennsylvania, on March 22, 2008, in Carlisle and Newville, Pennsylvania, and on April 8 and 9, 2008, in Chambersburg, Pennsylvania.

Government witness Montaye Kitt ("Kitt") testified that, in the early morning hours of February 1, 2008, he was robbed in a Harrisburg, Pennsylvania apartment rented by his then-girlfriend.  (See Tr. Day 2 at 103:9-115:7).[5]  Kitt testified that two men—both armed, masked, and dressed all in black—forced him to the floor and covered him as they "ransacked" the apartment, stealing televisions, appliances, a PlayStation, and his girlfriend's Mac computer.  (Id. at 108:13-110:4).  Kitt testified that he "didn't believe" Scott was one of the men who robbed him and that he did not want to testify against him.  (See id. at 122:23-123:11).  Government witness Annaliese Scherrer testified that she was in a relationship with Scott's codefendant,

---

[3] This section is based on the testimonial and documentary evidence introduced at Scott's trial, held from August 17 to August 26, 2010.  It includes only those facts relevant to the court's analysis.

[4] Scott's codefendants include Chance D. Bonner in Counts I, VI through IX, and X through XV; DeShawn Livingston in Counts I through V and XV; Lori Ann Miller in Counts I, XII, and XIII; and Miqual Hodge in Counts I, VI, VII, IX, and XI. (See Doc. 1).

[5] Citations to "Tr. Day __ at __" are to the transcript of Scott's jury trial.  (See Docs. 483-87, 502).

DeShawn Livingston ("Livingston"), in the spring of 2008 and that she overheard the pair planning Kitt's robbery. (Id. at 164:20-171:21). Cellular telephone records revealed that Scott's phone was used in the vicinity of Kitt's apartment during the time of the robbery. (See Tr. Day 2 at 177:18-178:3, 199:14-202:6).

On the third full day of trial, the government offered the testimony of Eric Clark, Jr. ("Clark"). (See Tr. Day 2 at 253:9-285:17). Clark described being robbed at gunpoint on March 22, 2008, outside of the home he shared with his wife and four children in Carlisle, Pennsylvania. (See id.) He testified that two men approached with guns, demanding drugs and money and threatening to "kill [his] youngest kid" if he did not comply. (Id. 254:8-257:6). When Clark saw an opportunity to escape, he ran toward an approaching vehicle and called the police. (See id. at 261:19-264:1). At trial, Clark offered physical descriptions of both robbers, explaining that both were young, black males, one short and one tall, and that the shorter individual was unmasked. (See id. at 257:7-258:10). Clark and investigating agent Scott Endy testified that, during an interview following the robbery, Clark identified Scott and codefendant Chance Bonner ("Bonner") as looking "similar" to the robbers. (See id. at 267:8-268:20 (Clark testimony); Tr. Day 3 at 11:5-12-24 (Endy testimony)).

The government's presentation on the fourth day of trial turned to a second robbery on March 22, 2008, this time occurring in Newville, Pennsylvania. Quinton Stackfield ("Stackfield") and Renee Barnes ("Barnes") testified that, late on March 22, 2008, two men approached the couple as they entered their apartment, forced them inside at gunpoint, and demanded drugs and money. (See Tr. Day 4 at 91:22-105:6, 126:19-136:19). The robbers stole a small amount of marijuana, $20 in cash,

electronics, jewelry, cell phones, and the couple's identifications. (See id. at 92:14-94:7, 103:15-17). The two men then forced Stackfield to arrange a deal with an acquaintance who was likely to have drugs, and Stackfield called Warren Bennett ("Bennett"), a friend living nearby. (See id. at 94:8-105:6). The pair forced Barnes, still at gunpoint, to drive the group to Bennett's home in her vehicle. (Id.) Each victim testified that, at Bennett's home, the robbers again demanded drugs and money, "pistol whipped" Bennett when he did not comply, and ultimately left with cash, drugs, and cell phones. (Id. at 94:8-105:6, 158:23-169:17; 126:19-136:19). Stackfield told agent Endy that Scott was "similar in characteristics" to the individual who robbed him, but stopped short of a positive identification. (Id. at 155:23-156:24). Cell phone records showed that Scott's phone was used in the vicinities of the Carlisle and Newville robberies at times consistent with the victim's testimony. (See id. at 209:10-215:10). Bonner's then-girlfriend, Jennifer Bass ("Bass"), and codefendant Miqual Hodge provided testimony corroborating the timelines and locations established by Clark, Barnes, Stackfield, and Bennett. (See Tr. Day 3 at 36:6-46:21; Tr. Day 4 at 8:5-20:11).

The government's evidence on the fifth day of testimony centered on events on April 8 and 9, 2008, in Chambersburg, Pennsylvania. Bass testified that on the night of April 8, she drove Scott, Bonner, and their two minor children to the home of codefendant Lori Ann Miller ("Miller"), where she overheard Bonner and Scott discussing a robbery with Miller and "an unknown black guy." (Tr. Day 5 at 20:19-25:23). According to the testimony of Michael Pearson ("Pearson"), Miller invited him to her home to settle a routine drug debt, and when he arrived, Scott and

Bonner staged a robbery, pistol whipping and taking several hundred dollars in drug proceeds from his pockets.[6]  (See Tr. Day 5 at 97:107:8).  Pearson testified that Scott and Bonner then forced him into his car, demanding that he take them to his house; under protest and at gunpoint, Pearson acceded and drove the group to the home he shared with his fiancée, Ruth Miller ("Ruth"),[7] and their four children.  (Id. at 109:3-113:10).  Pearson and Ruth both testified that Scott and his cohorts, still wielding firearms, burst into the room where Ruth was sleeping with the couple's three year old daughter and ordered her into the garage.  (See id. at 113:13-131:13 (Pearson); at 166:1-178:18 (Miller)).  They forced Ruth to turn over $1,480 in rent money, jewelry, and her glasses, and took approximately "four to five hundred dollars' worth" of crack cocaine from Pearson.  (Id. at 113:13-131:13, 166:1-178:18). Pearson explained that one of the robbers stabbed him in the neck with a sharp object, (id. at 116:11-117:16), and Ruth testified that Scott sexually assaulted her and forced her to engage in sexual acts with codefendant Miller while others watched. (Id. at 175:1-22).  When Scott and his compatriots left with cash, drugs, and various electronics, Pearson freed himself to unbind his fiancée; he was later airlifted to the hospital for treatment of his injuries.  (See Tr. Day 5 at 119:5-120:21, 176:12-16, 178:24-179:2).  Bass later met Scott, Bonner, Miller, and the then-unidentified fourth robber in a parking lot where the four transferred their bounty into Bass's car and

---

[6] Bass stated that she and her two children left upon Pearson's arrival.  (Tr. Day 5 at 25:7-26:24).

[7] The court notes that Ruth Miller and Lori Ann Miller are not related.  (See Tr. Day 5 at 103:3-5).

returned to Harrisburg. (See Tr. Day 5 at 25:24-30:20). Expert testimony again established that Scott's cell phone was used in the vicinity of the Chambersburg robberies at times consistent with the victims' testimony. (See Tr. Day 4 at 215:11-222:18).

On May 14, 2008, Jeffrey Kurtz ("Kurtz"), a Carlisle Borough police detective investigating the robberies, was informed by a confidential informant that one of the robbers was storing stolen items at an apartment leased to Samantha Jackson, a friend of Scott's. (See Doc. 216 at 2-3; see also Tr. Day 1 at 4:16-9:25 (Jackson trial testimony); Tr. Day 5 at 71:6-79:17 (Kurtz trial testimony)). Kurtz swore out an affidavit of probable cause and applied for and received a warrant to search the apartment. (See Doc. 216 at 2-3; see also Tr. Day 5 at 71:6-79:17). Several law enforcement officers, including Kurtz, testified that during the execution of the search warrant, officers discovered and seized electronic items and identification cards stolen from and identified by various victims. (See Tr. Day 1 at 144:5-145:10; Tr. Day 5 at 71:21-79:12)).

## II.   <u>Procedural History</u>

On February 25, 2009, a federal grand jury returned an indictment charging Donald A. Scott ("Scott") and others with multiple offenses. The indictment charges Scott with fourteen (14) counts, as follows: conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371 (Count I); five counts of interference with interstate commerce by threats of violence ("Hobbs Act robbery") in violation of 18 U.S.C. § 1951 (Counts II, IV, VI, VIII, and XII); five counts of possession, use, or carrying a firearm during a crime of violence in violation of 18

U.S.C. § 924(c)(1)(A) (Counts III, V, VII, X, XIV); two counts of carjacking in violation of 18 U.S.C. § 2119 (Counts IX and XIII); and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) (Count XV). (Doc. 1). On March 31, 2009, Scott presented for his initial appearance, arraignment, and detention hearing with retained counsel, Joseph Caraciolo, Esquire ("Attorney Caraciolo"). Scott thereafter retained different private counsel, James West, Esquire ("Attorney West").

Prior to trial, Attorney West filed several motions on Scott's behalf, including a motion to suppress certain physical evidence seized from Jackson's apartment and to suppress identification testimony offered by Pearson. (See Docs. 143, 145). Attorney West also moved to bifurcate the felon in possession charge. (See Doc. 147). The court held a hearing on the motions on August 26, 2009, after which the parties filed supplemental memoranda in support of their positions. (See Docs. 185, 194). On November 20, 2009, the court issued a memorandum and order (Doc. 216) denying the motions in part, holding that Scott lacked standing to challenge the sufficiency of the Jackson warrant and had not demonstrated that officers used a suggestive identification procedure when interviewing Pearson. (See id. at 7-14). However, the court also held that Scott did have a reasonable expectation of privacy in a personal computer seized from Jackson's apartment, and granted his motion to suppress the fruits of the computer search. (Id. at 12-13). The court also granted Scott's motion to bifurcate Count XV. (Id. at 16).

Thereafter, but in advance of trial, Attorney West moved to withdraw, and the court appointed Daniel Myshin, Esquire, ("trial counsel" or "defense counsel"),

to represent Scott.  (Docs. 286, 293).  Trial began with jury selection and opening

arguments on August 17, 2010.  On August 26, 2010, after a week of testimony, the

jury returned a guilty verdict against Scott on all counts except Counts II and III.

(See Doc. 403).  The government dismissed the Section 922(g) felon in possession

charge after the jury returned its verdict.  Scott's sentencing guideline range was

very high—1,276 to 1,349 months—principally because of his multiple Section 924(c)

convictions.  On January 14, 2011, after hearing trial counsel's arguments and

balancing the salient 18 U.S.C. § 3553(a) factors, the court imposed a sentence of

1,276 months.  (See Doc. 470).  Trial counsel moved to withdraw his appearance

immediately after the sentencing proceeding, and the court granted his request.

(See Docs. 463, 468).

Scott appealed his judgments of conviction and sentence to the United States

Court of Appeals for the Third Circuit on January 20, 2011, (Doc. 472), and the Third

Circuit appointed Matthew Zeigler ("Attorney Zeigler") to represent him.  Attorney

Zeigler raised two arguments on Scott's behalf: *first*, that the court erred when it

applied a six-level enhancement pursuant to United States Sentencing Guideline §

2B3.1(b)(3)(C) after finding that Pearson suffered a "permanent or life-threatening

injury" rather than a "serious" injury and, *second*, that trial counsel was ineffective

in connection with the unsuccessful motion to suppress physical and identification

evidence.  United States v. Scott, 504 F. App'x 157, 158 (3d Cir. 2012).  On November

15, 2012, the Third Circuit issued a nonprecedential opinion affirming the district

court.  The panel first upheld the court's application of a six-level enhancement for

permanent bodily injury.  See id. at 160.  The panel also rejected Scott's ineffective

assistance arguments.  See id. at 161-62.  Setting aside its typical preference to

"defer the issue of ineffectiveness . . . to a collateral attack," the Third Circuit held

that the record below "plainly demonstrates" that Scott was not prejudiced by trial

counsel's performance.  Id. at 161.  Scott did not petition the Supreme Court of the

United States for *certiorari*.

On February 7, 2014, Scott filed the pending motion (Doc. 548) to vacate, set

aside, or correct sentence under 28 U.S.C. § 2255, asserting seven different claims of

ineffective assistance of counsel and one freestanding claim of "actual innocence."

The government filed a brief in opposition to Scott's motion on May 14, 2014.  (Doc.

562).  Scott thereafter moved to amend, (see Doc. 567), seeking to clarify one of his

initial arguments and to include a new claim of ineffective assistance based upon

the Supreme Court's recent decision in Alleyne v. United States, __ U.S. __, 133 S.

Ct. 2151 (2013).  All motions are briefed and ripe for review.

**III.**   **Standard of Review**

The two-pronged test articulated in Strickland v. Washington, 466 U.S. 668

(1984) governs claims for ineffective assistance of counsel.  To prevail on this claim,

a petitioner must demonstrate (1) that trial counsel's representation fell below an

objective standard of reasonableness based on prevailing professional norms and

(2) that the deficient representation was prejudicial.  Id. at 687-88.  A determination

of ineffective assistance of counsel necessarily relies on consideration of the totality

of unique circumstances in each case.  United States v. Baynes, 687 F. 2d 659, 665

(3d Cir. 1982).  Conclusory allegations are insufficient to entitle a petitioner to relief

under Section 2255.  See Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40

(D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

In determining whether counsel has satisfied the objective standard of

reasonableness in accordance with the first Strickland prong, courts must be highly

deferential toward counsel's conduct.  Id. at 689.  There is a strong presumption

that counsel's conduct falls within the wide range of reasonable professional

assistance.  See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989).  Only a "rare

claim" of ineffectiveness of counsel should succeed "under the properly deferential

standard to be applied in scrutinizing counsel's performance."  Id. at 711 (citing

Strickland, 466 U.S. at 689-90).  Counsel will not be deemed ineffective for failing to

raise a meritless claim.  United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that, but for

counsel's errors, the outcome of the proceeding would have been different.  See

Strickland, 466 U.S. at 694.  The district court need not carry out its analysis of the

two prongs in a particular order or even address both prongs of the inquiry if the

defendant makes an insufficient showing in one.  Id. at 697.  Moreover, when the

record affirmatively indicates that a petitioner's Section 2255 claim for relief is

without merit, the claim may be decided on the record without a hearing.  See

Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985).

## IV.  **Discussion**

Scott asserts eight different grounds in support of his request for Section

2255 relief, (see Doc. 548), and a ninth ground in his motion to amend his petition,

(see Doc. 567).  As set forth below, the court finds no error or deficiency in trial counsel's performance.

### A.    Grounds I and II: Ineffective Assistance – Juror Misconduct

Scott opens his motion with a claim for ineffective assistance of trial counsel based upon suspected juror misconduct.  Scott argues that he reported the alleged misconduct to trial counsel, who refused to report the same to the court.  (See Doc. 548 at 5(a)).  This claim has evolved almost beyond recognition throughout post-conviction motion practice.  First, in a *pro se* motion for a new trial filed prior to sentencing, Scott argued that trial counsel failed to bring to the court's attention "several alleged communications during . . . trial between [Scott's] acquaintance Keyla Evans, with whom [Scott] himself was communicating, and juror Courtney Brown, and the subsequent revelation of privileged information to Brown by Evans."  (Doc. 459 at 2).  Scott conceded the motion's untimeliness, and the court denied same, noting both timeliness concerns and the procedural impropriety of resolving ineffective assistance of counsel claims in post-trial motion practice.  (See Doc. 464 at 2).

In his newest iteration, Scott alleges that, during trial and while he was imprisoned at Dauphin County Prison, juror Brown contacted him directly.  (See Doc. 548 at 5(a)).  According to Scott, Brown undertook her own investigation into the case and "expressed [an] interest in being paid . . . for a favorable vote of not guilty," stating an asking price of $10,000.  (Id.)  Scott contends that he brought Brown's communications to trial counsel's attention but that counsel "refused to investigate it or report it to the court[]."  (Id.)  Scott attaches to his instant motion a

11

private investigation report authored by Matthew E. Hunt ("Hunt"), which restates many of Scott's allegations. (See Doc. 548, Ex. C). Citing his averments and Hunt's report, Scott posits that trial counsel's failure to investigate juror misconduct or to bring it to the court's attention denied him the effective counsel guaranteed by the Sixth Amendment. (See id.)

As a threshold matter, Scott did not raise this argument before the Third Circuit on direct appeal. See Scott, 504 F. App'x at 158. Assuming the truth of his allegations, Scott learned of the purported misconduct during trial in August of 2010, long before he appealed his conviction and sentence to the Third Circuit. As a general rule, claims that could have been but were not raised on direct appeal are not subject to collateral review unless the petitioner establishes both "cause" for the waiver and "actual prejudice" resulting from the violation. See United States v. Pelullo, 399 F.3d 197, 220-21 (3d Cir. 2005) (quoting United States v. Frady, 456 U.S. 152, 167 (1982)). Scott offers little explanation for his failure to raise a present claim of juror misconduct before the Third Circuit, and the court discerns no cause for the waiver. Accordingly, the court concludes that this argument has been waived.

To be sure, the court observes that this claim is substantively meritless. As to the initial claim of juror misconduct involving the government's witness and Brown, the government asserts that trial counsel did investigate Scott's allegations and report to the court that they were meritless and unsubstantiated. (See Doc. 562 at 5-6). Indeed, it is the court's recollection that counsel informed the court of his client's allegations with respect to Brown but confirmed that he was unable to substantiate them. Cf. Govt. of V.I. v. Nicholas, 759 F.2d 1073, 1077 (3d Cir. 1985)

("[I]t was appropriate for the trial judge to rely upon his personal knowledge and recollection in considering the factual allegations in the [petitioner's] section 2255 petition that related to events that occurred in his presence").  Further, in a commendable exercise of diligence, the government conducted an interview with Brown after trial.  (See Doc. 562-1).  According to Brown, "any allegation that she had contact and communications with [Evans] or anyone else during the trial and deliberations are false."  (Id. ¶ 4).  She stated that "at no time during the trial or deliberations did *anyone* have inappropriate contact and communications with her."  (Id. (emphasis added)).  Thus, Scott's claim fails because he is unable to establish that trial counsel's actions fell below an objective level of reasonableness in violation of the Sixth Amendment or prejudice.  See Strickland, 466 U.S. at 689-90.

In his motion to amend, Scott alternatively asserts that, had he known that trial counsel investigated and reported these allegations, he would have styled his claim as one for abuse of discretion rather than ineffective assistance.  (See Doc. 567).  The court similarly rejects this claim, for all of the reasons stated *supra*.  Scott's vacillating and unsubstantiated claims of juror misconduct do not entitle him to Section 2255 relief.

## B.     Ground III: Ineffective Assistance – Improper Jury Instructions

Scott contends that trial counsel's performance was constitutionally deficient because trial counsel did not object to an erroneous jury instruction.  (Doc. 548 at 8(a)).  Scott specifically challenges the court's instruction regarding the interstate nature of drug trafficking, wherein the court instructed that: "Proving theft of the

13

proceeds of illegal drug trafficking that is engaged in interstate commerce satisfies the government's requirement to prove an effect on interstate commerce." (Doc. 548 at 8(a); <u>see</u> <u>also</u> Tr. Day 6 48:23-49:1). According to Scott, the court's instruction "essentially foreclosed any jury determination on the jurisdiction element of the Hobbs Act liability." (Doc. 548 at 8(a)).

The court disagrees. Scott's selective reading of the jury charge eliminates helpful context, resulting in Scott's misapprehension of the instruction *in toto*. The court first instructed that: "Drug trafficking *may* affect interstate commerce" and "interference with the drug dealer's trade *may* violate the Hobbs Act." (Tr. Day 6 at 48:16-22 (emphasis added)). The court explained to the jury that only if it found that "the illegal narcotics travelled in interstate commerce" was it permitted to find that the government satisfied the jurisdictional element. (<u>Id.</u>) Indeed, this directive is explicit in the challenged instruction itself, which charges the jury that it must *first* find proof that the drug proceeds derived from "drug trafficking . . . in interstate commerce" before finding that the government satisfied its burden of proving an interstate nexus. (<u>See</u> Tr. Day 6 at 48:23-49:1). Hence, nothing in the court's instruction foreclosed any factual finding by the jury, and trial counsel was not ineffective for failing to challenge the instruction Scott cites.

### C.    Ground IV & V: Ineffective Assistance – Failure to Investigate and Failure to Call Witnesses

Scott argues that counsel rendered ineffective assistance by failing to present "exculpatory" witnesses and evidence. Scott alleges that, prior to trial, he informed counsel that he is left-handed and suffered an injury to his right hand before the

14

Pearson robbery.  (<u>See</u> Doc. 548 at 9(a)).  An examination report appended to Scott's petition indicates that Scott presented to the emergency room at Pinnacle Health in Harrisburg, Pennsylvania, on March 9, 2008, for an "oblique fracture" to the "right fifth metacarpal." (<u>See</u> Doc. 548, Ex. D).  Scott was apparently discharged with a splint and instructions to use Tylenol as necessary for pain.  (<u>See id.</u>)  A radiology report appended to the petition indicates that during a March 13, 2008, follow-up, Scott's injury presented without change.  (<u>See id.</u>)  According to Scott, this evidence would have "called into question Mr. Pearson's narration of events," namely that Scott struck him with his right hand on April 8, 2008.  (<u>See</u> Doc. 548 at 9(a)).  It is unclear whether Scott suggests that trial counsel should have impeached Pearson with the reports or called the witnesses separately as part of the defense case.  The government responds that whether Scott used his right hand or his left hand to strike Pearson is inconsequential when measured against the balance of the record.

Scott raises a similar challenge with respect to trial counsel's purported "failure to properly prepare a reasonable defense" based upon certain telephone records.  (Doc. 548 at 10(a)).  According to Scott, cell phone records place him in Harrisburg, Pennsylvania, between 9:00 and 9:32 P.M. and establish that he did not arrive in Chambersburg, Pennsylvania, until after 10:00 P.M.  (<u>See id.</u>)  Scott asserts that a witness informed police that the Chambersburg robbery began between 8:00 and 8:30 P.M., and that records placing him in Harrisburg, Pennsylvania, at that time are "clearly exculpatory" and "prove[] [his] innocence."  (<u>Id.</u>)  Scott suggests that the witness should have been called to refute the testimony of multiple victims

and government witnesses establishing a timeline for the Chambersburg robbery.[8]
The court disagrees with Scott as to both grounds.

As a general rule, courts defer cross-examination and impeachment
strategies to the sound discretion of trial counsel.  See Jackson v. Bradshaw, 681
F.3d 753, 765 (6th Cir. 2012); Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir.
1997); see also United States v. Orr, 636 F.3d 944, 952 (8th Cir. 2011).  Such decisions
are considered tactical and, hence, will not be considered deficient simply because
better options might have existed.  See Reynoso v. Giubino, 462 F.3d 1099, 1133 (9th
Cir. 2006).  Trial counsel's approach will not be deemed ineffective unless the
movant overcomes Strickland's presumption that the tactic could be considered
sound defense strategy.  See Strickland, 466 U.S. at 689.  Stated differently, the
court will defer to trial counsel's tactical decision unless the failure to impeach or
present evidence is so egregious as to fall "outside the wide range of professionally
competent assistance" guaranteed by the Sixth Amendment.  Id. at 689-90.

The court finds no constitutional deficiency in trial counsel's decision not to
question which hand Scott used to strike Pearson.  During cross-examination, trial
counsel explored various impeachment avenues in attempt to undermine Pearson's
credibility.  Trial counsel noted inconsistencies in Pearson's physical descriptions of
Scott and his cohorts, challenged his identifications, and questioned his motives for
testifying given a favorable agreement with the government.  (See Tr. Day 5 131:18-
148:24).  The decision to explore certain impeachment strategies while deciding not

---

[8] The court notes that Scott did not attach the referenced cell phone records
or the alleged report confirming the eyewitness's account to his motion.

to employ others is within the sound discretion of trial counsel.  See Jackson, 681 F.3d at 765; Henderson, 118 F.3d at 1287; see also Orr, 636 F.3d at 952.  In light of trial counsel's extensive impeachment efforts, the court cannot conclude that his performance was ineffective.

Similarly, the court finds no error in defense counsel's decision not to further highlight or explore the cell phone record evidence presented by the government. Scott challenges counsel's purported refusal to call a single witness who he claims would have testified that the Chambersburg robbery began between 8:00 and 8:30 P.M. and to emphasize that cell phone records place him in Harrisburg at that time. (Doc. 548 at 10(a)).  To do so would permit the government to revisit the fact that those same records place Scott in Chambersburg at or around 10:00 P.M., the time that the Pearson robbery began according to *every* other trial witness.  The court cannot condemn trial counsel's decision to avoid rather than reinforce such incriminating evidence.

In any event, "failure to satisfy either Strickland prong is fatal to a claim of ineffective assistance of counsel," Scott, 504 F. App'x at 162 n.7 (citing Carpenter v. Vaughn, 296 F.3d 138, 149 (3d Cir. 2002)), and Scott cannot establish that counsel's decisions prejudiced the defense.  Under the second Strickland prong, Scott must establish that "but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In other words, Scott must show "a probability sufficient to undermine confidence in the outcome" of the trial.  Jacobs v. Horn, 395 F.3d 92, 105 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 693–94).  The court must evaluate counsel's performance and

petitioner's arguments "in light of the totality of the evidence at trial." Rolan v.

Vaughn, 445 F.3d 671, 682 (3d Cir. 2006) (quoting Gray, 878 F.2d at 710-11).

Extensive trial testimony established that on April 8, 2008, Scott and his

codefendant robbed Pearson and his fiancée at gunpoint, threatening their lives

and the lives of their children and demanding that their victims turn over drugs,

cash, and valuables.  (See Tr. Day 5 at 101:14-128:20, 166:10-182:18; see also id. at

20:19-25:23 (Bass testifying that she dropped Scott and Bonner off at Miller's home

and heard them planning the robbery)).  Against the substantial weight of this

inculpatory evidence, whether Scott used his right or left hand to strike Pearson is

inconsequential.  Moreover, the records that Scott identifies as "exculpatory" are

the same records that place him squarely in the Chambersburg area during the

robberies, corroborating rather than refuting the victims' timeline testimony.  (See

Tr. Day 4 at 215:11-222:18).  Neither argument casts doubt upon the integrity of the

jury's verdict.  Consequently, the court finds no reasonable probability that "but for

counsel's errors," the jury would have reached a different result.  Boyd v. Ward, 179

F.3d 904, 913-14 (citing Strickland, 466 U.S. at 694).

### D.    Ground VI: Ineffective Assistance – Suppression of Identification Evidence and Failure to Exploit a Lack of Identification

Scott next takes aim at what he perceives to be an "unnecessarily suggestive

identification" and his trial counsel's failure to "exploit the fact that the government

was making someone testify against their will."  (Doc. 548 at 10(b)).  Regarding the

former, Scott maintains that Pearson was only able to identify him after both men

were incarcerated at State Correctional Institution ("SCI") Camp Hill, when, in

connection with a request to separate them, staff at SCI Camp Hill showed Pearson a photograph of Scott, "inadvertently giving Pearson a clear identity of . . . Scott which he used to positively identify Scott in a line up or court" despite a previous failure to do so.  (Id.)  As to the latter, Scott argues that counsel did not sufficiently exploit the fact that Kitt testified on behalf of the government against his will.  (See id.)  The record plainly refutes both arguments.

The identification process was the subject of an unsuccessful pretrial motion to suppress.  (See Doc. 143).  In the motion and attendant briefing, Attorney West litigated issues identical to those that Scott now attempts to revisit.  (See id.; Doc. 144 at 4-7).  The court conducted a full evidentiary hearing, ultimately concluding that the record did "not establish that an identification ever occurred," but leaving the door open for Scott to "retool his motion" in the event that he discovered new evidence.  (Doc. 216).  Scott did not raise the issue on direct appeal, see Scott, 504 F. App'x at 158-62, and he fails to offer any new evidence in support of this claim.  His papers offer no suggestion as to what more Attorney West could or should have done.  (See Doc. 548 at 10(b)).  Accordingly, the court finds no deficiency in counsel's handling of the suppression issue.[9]

Scott next asserts that trial counsel failed to emphasize that Montaye Kitt testified with great reluctance at Scott's trial, suggesting prosecutorial compulsion.

---

[9] As noted, Scott did not present this issue to the Third Circuit on direct appeal.  See Scott, 504 F. App'x at 158.  Scott's petition neither mentions nor explains his failure to raise this argument before the appellate court, and the court discerns no "cause" to excuse his waiver of this argument.  See Pelullo, 399 F.3d at 220-21 (quoting Frady, 456 U.S. at 167).

(See Doc. 548 at 10(b)).  Specifically, Scott contends that defense counsel "failed to exploit the fact that the government was making someone testify against their will," and did not take advantage of this witness's exculpatory testimony.  (See id.) Scott's assertion is wholly meritless.  Kitt stated during direct examination that he did not want to testify because he did not believe that Scott had robbed him.  (Tr. Day 1 at 122:2-123:21).  During cross-examination, defense counsel asked Kitt whether he could identify Scott as one of the robbers, and Kitt replied that he could not.  (Id. at 128:4-129:21).  Defense counsel also elicited from Kitt that he informed the court prior to the potential influence of any plea negotiations that he did not "feel like it was Donald Scott that committed the robbery."  (See id. 132:22-133-4). To prove that Kitt's exculpatory testimony was not offered merely because he feared the repercussion of cooperating with the government, defense counsel established that the government had ensured Kitt that no information regarding cooperation would be made public.  (Id. at 129:25-132:16).  Defense counsel then reemphasized Kitt's inability to identify Scott in closing arguments.  (Tr. Day 6 at 40:18-23).  Scott's contention that defense counsel failed to exploit Kitt's testimony is simply inaccurate.  The court will deny Scott's motion on these grounds.

### E.    Ground VII: Ineffective Assistance – Suppression of Physical Evidence

In a related ground, Scott asserts that his trial counsel was ineffective in failing to pursue the suppression of certain physical evidence.  (See Doc. 548 at 10(c)).  Again, the record controverts Scott's argument.  Trial counsel *did* separately move to suppress the evidence that Scott now challenges as fruits of an unlawful

search. (Doc. 145). Counsel raised two arguments: *first*, that the search warrant application was defective because the affidavit of probable cause included a false statement, in violation of <u>Franks v. Delaware</u>, 438 U.S. 154 (1978) and, *second*, that the items seized were beyond the scope of the warrant's inventory. (<u>See</u> Doc. 146). The court rejected the first argument, noting that, although the affiant erroneously reported the date of a relevant statement, the statement was neither recklessly made nor material to the finding of probable cause. (<u>See</u> Doc. 216 at 8-10 (citing <u>Wilson v. Russo</u>, 212 F.3d 781, 788 (3d Cir. 2000)). The court also denied Scott's second argument, concluding that he lacked any reasonable expectation of privacy in an apartment where he was not invited, and where he was neither the legal tenant nor a resident.[10] (<u>See</u> <u>id.</u> at 10-13 (citing <u>Minnesota v. Carter</u>, 525 U.S. 83, 89 (1998); <u>United States v. Perez</u>, 280 F.3d 318, 337 (3d Cir. 2002)). Scott raised these issues on direct appeal, and the Third Circuit affirmed the court's decision with respect to both grounds. <u>See</u> <u>Scott</u>, 504 F. App'x at 161-62. Relevantly for purposes of the instant motion, Scott does not identify an error by counsel or suggest an alternative approach. He cites no new evidence and offers no new argument in support of his request, which is identical to the argument lodged on his behalf by trial counsel. The court will deny this final ineffective assistance of counsel claim.

## F.     Ground VIII: Actual Innocence – Kitt and Pearson Robberies

In his last ground for relief, Scott contends that he is "actually innocent" of the Pearson and Kitt robberies and urges the court to vacate both convictions. As

---

[10] The court concluded that Scott had standing to challenge the subsequent search of his laptop computer by the Cumberland County Forensics Unit, finding that he possessed a reasonable expectation of privacy therein. (Doc. 216 at 12-13).

to Pearson, Scott reiterates the fourth and fifth grounds of his petition, contending that a nontestifying eyewitness and medical records reflecting a right-hand injury at the time of the robbery firmly establish his innocence.  (See id.)  Regarding the Kitt robbery, Scott contends that codefendant Bonner recently rescinded his own confession and stated that Scott did not commit any of the robberies. (See Doc. 548 at 10(d)).  Scott's final salvo fires wide of the mark.

As a threshold matter, neither the Supreme Court nor the Third Circuit Court of Appeals have recognized a freestanding claim for Section 2255 relief based upon a movant's assertion of actual innocence.  See House v. Bell, 547 U.S. 518, 554-555 (2006) ("We conclude here . . . that whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it."); see also Herrera v. Collins, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." (emphasis added)).  Precedent from both appellate courts suggests that, if either were to recognizes such a claim, the standard to attain relief would be "extraordinarily high."  See Herrera, 506 U.S. at 400, 417 (envisaging freestanding claim of innocence in a capital case only upon "a truly persuasive demonstration" of innocence and subject to an "extraordinarily high" burden); Albrecht v. Horn, 485 F.3d 103, 121-22 (3d Cir. 2007) (acknowledging the putative "extraordinarily high" standard set by Herrera).

Assuming solely for purposes of argument that such a claim might exist, Scott's position falls well short of satisfying an "extraordinarily high" burden.  See,

e.g., United States v. Schwartz, 925 F. Supp. 2d 663, 693-94 (E.D. Pa. 2013) (assuming *arguendo* that actual innocence claim exists but concluding that movant did not satisfy the exacting burden) (citing House, 547 U.S. at 554-55; Herrera, 506 U.S. at 400, 404; Albrecht, 485 F.3d at 121; Fielder, 379 F.3d 113, 122 (3d Cir. 2004)). That burden tasks Scott to establish that "in light of all the evidence, . . . it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623-24 (1998) (quoting Schlup v. Delo, 513 U.S. 327-28 (1995) (internal quotation marks omitted)).  This Scott cannot do.

In actuality, this final argument is a transparent attempt to recast the ineffective assistance claims rejected *supra*.  Scott asserts that the jury could not have reached its verdict but for trial counsel's perceived failures, specifically the decision not to further explore the cell phone records, to debate which hand Scott used to strike Pearson, and to revisit the identification evidence.  For the reasons already stated, the court finds no constitutional deficiency in trial counsel's performance.  See *supra* at 11-21.

In further support of his claim, Scott asserts that codefendant Bonner recanted a statement implicating Scott as his partner in crime.  Critically, Scott's jury never received evidence of Bonner's now-rescinded confession in the first instance.  Thus, the confession had zero impact upon the jury's finding of guilt. Moreover, as noted throughout this memoranda, the jury's findings are grounded in witness and victim testimony and the testimony of law enforcement officers painstakingly elicited by the government, as well as cell phone records placing Scott and his cohorts in the vicinity of the robberies at the time of their occurrence.  Upon

careful consideration of the record *in toto*, the court cannot find "that no reasonable juror would have convicted" Scott.  See <u>Bousley</u>, 523 U.S. at 623-24; <u>Schlup</u>, 513 U.S. at 327-28.

      **G.**      **Motion to Amend and <u>Alleyne v. United States</u>**

      Scott lastly seeks to amend his petition to include a claim based on the Supreme Court's recent decision in <u>Alleyne v. United States</u>, ___ U.S. ___, 133 S. Ct. 2151 (2013).  The proposed claim pertains to sentencing, specifically assigning error to the court's imposition of consecutive twenty-five (25) year sentences for multiple convictions under 18 U.S.C. § 924(c).  (<u>See</u> Doc. 567 at 3).  Scott argues that a judicial finding of a second or subsequent Section 924(c) violation increases a defendant's mandatory minimum sentencing exposure and, pursuant to <u>Alleyne</u>, is thus a fact that must be determined by a jury beyond a reasonable doubt, rather than by the court during sentencing.  According to Scott, the court exceeded its authority in applying multiple, consecutive twenty-five (25) year sentences.

      In <u>Alleyne</u>, the Supreme Court concluded that any fact which enhances a defendant's mandatory minimum sentencing exposure is an element of the offense which specifically must be submitted to and found by the jury.  See <u>Alleyne</u>, 133 S. Ct. at 2163 (overruling <u>Harris v. United States</u>, 536 U.S. 545 (2002) and holding "that facts that increase mandatory minimum sentences must be submitted to the jury").

Scott contends that the court erred in determining that two of his convictions under Section 924(c) were second or subsequent convictions mandating application of two consecutive twenty-five (25) year minimums.  According to Scott, <u>Alleyne</u> requires the court to put that inquiry to a jury.

Scott's argument is baseless.  The jury found him guilty of four (4) separate violations of Section 924(c).  (<u>See</u> Doc. 403 at 3-6).  In other words, the jury "actually found all of the facts giving rise to the enhanced, consecutive 25 year sentencing provision, beyond a reasonable doubt":  that Scott committed four (4) separate violations of the statute.  <u>See</u> <u>United States v. Askew</u>, No. 03-244, 2014 U.S. Dist. LEXIS 57779, at *7-9 (E.D. Pa. April 25, 2014) (concluding that neither <u>Alleyne</u> nor its predecessor, <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), require a separate jury finding to trigger Section 924(c)'s consecutive 25 year sentencing provision).  Scott's assertion to the contrary is meritless, and the court will deny his motion for leave to amend as futile.

## V.   <u>Conclusion</u>

For all of the foregoing reasons, the court finds that the record conclusively establishes that Scott is not entitled to Section 2255 relief.  The court will deny his motion (Doc. 548) to vacate, set aside, or correct sentence under 18 U.S.C. § 2255, as well as his motion (Doc. 567) to amend.  An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    April 27, 2015